*698 TATE, Justice
(dissenting).
I must respectfully join Mr. Justice BARHAM’s dissent.
Our state 'constitution unambiguously provides that “cases in which the punishment may be capital” “shall be tried” “by a jury of twelve, all of whom must concur to render a verdict.” Art. VII, Section 41, La.Constitution of 1921 (Italics mine). The unambiguous meaning of “capital punishment” is the death penalty, as my brother’s scholarly dissent shows.
In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), a majority of the United States Supreme Court held that, under statutory schemes similar to that applicable in the present case (where the jury has unlimited discretion to impose life or death), the death penalty 'is unconstitutional. In compliance with tlie' Supreme Court decision, this court has recognized that death penalties received under our present statutes must be set aside and’ the convicted defendant be re-sentenced to life imprisonment. State v. Franklin, 263 La. 344, 268 So.2d 249 (rendered October 26, 1972).
Therefore, under our state constitution —since “the punishment may be capital”, Art. VII, Section 41, no longer by reason of Furman — the state is entitled to try this case on the basis that a non-unanimous (9 of 12) verdict may convict, just as in all other non-capital major felonies.[1]
The majority has adopted a position which at first seems attractive and sensible. In effect, the majority says — let the legislature move in to regulate the chaos in our procedural law resulting from the Fur-man decision. As much as I would personally prefer to do so, we abdicate our judicial function when we fail to apply present mandatory requirements and restrictions of our state constitution in the hope the legislature may somehow resolve the crisis.
Until the state constitution is changed, any legislative regulation contrary to the present provisions would be invalid. Our duty is to • enforce the state and federal constitutions. We fail in such duty when we do not apply unambiguous provisions of our state constitution and, in effect, pretend that Furman was not decided invali *700 dating the death penalty under the statutes upon which the present defendant is tried.
We should likewise note that Furman ■did not invalidate the death penalty per se —only as applied under statutes similar to those here involved. As I read the opinions in Furman, a majority of the United States Supreme Court did not invalidate a mandatory death penalty to he applied under narrowly prescribed circumstances— such as intentionally killing a law enforcement officer known to be such and in the •performance of his duties. If such a statute is enacted and is valid, then the present constitutional provisions regulating capital ■cases are applicable — they are not invalidated because of Furman, they simply do •not apply to offenses charged under present statutes of our state, since under Furman such offenses are no longer subject to capital punishment.
' Constitutions become inconvenient things when a current generation regards as irrelevant considerations which induced a previous one to incorporate in the organic law mandatory requirements or protections of individuals and restraints on governmental action. Conceding that some leeway to accord with contemporary notions is afforded in the judicial interpretation of merely general standards (e. g., “due process of law”, every person shall have “adequate remedy . . . administered without . . . unreasonable delay”, see La.Constitution, Article I, Section 6), nevertheless, faced with a flat and explicit constitutional command, the courts must enforce it. It is so in this case.
I must therefore respectfully dissent.

. Similarly, the accused is entitled to bail as in all other non-capital cases, Article I, Section 12, La.Constitution, see State v. Flood, 263 La. 700, 269 So.2d 212, rendered this same date, in which case I dissent also for reasons similar to those here stated. Of course, in fixing bail, the trial court may consider, inter alia, “The seriousness of the offense charged”, “The previous criminal record of the defendant”, and “Any other circumstances affecting the probability of the defendant’s appearance”, La.C.Cr.P. Art. 317 (1), (3), and (5), which indicates that, in the serious crimes of violence involving a life sentence if convicted, the trial court may fix the amount of bail sufficiently high to avoid the untoward effects feared, such as in the case of armed robberies presently — which, were it not for our state constitution, might reasonably be made non-bailable if quickly tried.